**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Marilyn Julyan,

Plaintiff,

v.

Fortis Benefits Insurance Company,

Defendant.

Civil File No. 02-5 (MJD/JGL)

**MEMORANDUM AND ORDER**

---

This matter is before the Court on Defendants' Motion for Summary Judgment. For the reasons that follow, the Court grants Defendant's motion.

**BACKGROUND**

Plaintiff Marilyn Julyan ("Julyan") worked for Great River Homes, Inc. ("GRH") through Public Health Service of Goodhue County from April 1992 to March 31, 2000. GRH made available to its employees a long term disability insurance policy issued by Defendant Fortis Benefits Insurance Company ("Fortis"). The policy was effective for active employees on December 1, 1999. Plaintiff was covered by the policy. That policy is subject to and governed by the Employment Retirement Income Security Act of 1974 ("ERISA") at 29 U.S.C. §§ 1001 et seq. The terms of the disability policy grants discretionary authority to Fortis to determine eligibility, benefits, and interpretation of the plan's terms. (See Def. Ex. A at 24.) The policy has a pre-existing condition clause that reads as follows:

We will not pay benefits for any disability caused by a pre-existing condition

FILED 11-7-02
RICHARD D SLETTEN, CLERK
JUDGMENT ENTD 11-7-02
DEPUTY CLERK

(defined below) until you have been at active work for a full day following the earlier of:

3 consecutive months, ending on or after the day you became insured under the long term disability insurance policy, during which you do not consult with or receive advice from a licensed medical or dental practitioner or receive medical or dental care, treatment or services, including taking drugs, medicine, insulin, or similar substances, for that condition; or

12 consecutive months during which you are continuously insured under the long term disability insurance policy.

A 'pre-existing condition' means an injury, sickness, or pregnancy or any related injury, sickness or pregnancy for which you:

consulted with or received advice from any licensed, medical or dental practitioner;

received medical or dental care, treatment, or services, including taking drugs, medicine, insulin or similar substances,

during the three (3) months that end on the day before you became insured under the long term disability policy.

(Id. at 21.)

On March 15, 1999, Plaintiff treated with her family physician, Dr. Craig Thauwald ("Thauwald"), for aches in her bones. On March 23, 1999, Plaintiff reported to Dr. Thauwald ("Thauwald") the same non-specific bone discomfort in her bones. However, according to medical records, "recent screening lab work done [revealed] no identifiable reason or cause." (Id. at FBIC 101.) On March 23, 1999, Plaintiff was also seen by Katherine Zahosky, A.N.P., ("Zahosky") who noted that Plaintiff had been suffering from trouble with "migratory pain in her joints and muscles, ankles, hips, shoulders and back" over the last two (2) weeks. (Id. at FBIC 171.) On October 5, 1999, Plaintiff saw Dr. Thauwald for difficulty with her right shoulder and neck discomfort, and diffuse joint aches in her hips

and knees. Additionally, Plaintiff reported sleep problems. On October 19, 1999, Plaintiff again reported to Dr. Thauwald that she was extremely tired and had neck symptoms. On October 21, 1999, Plaintiff reported to Zahosky with shoulder, neck, and hip pain and fatigue.

On January 18, 2000, Plaintiff reported to Dr. Thauwald with the same symptoms of "diffuse achiness in her muscles and in her joints" as well as continued neck and back discomfort. (Id. at FBIC 67.) During that visit, Plaintiff asked whether she was suffering from Fibromyalgia. On March 16, 2000, after referral, Plaintiff was seen by Dr. Robert DePompolo ("DePompolo ") for possible Fibromyalgia. Fibromyalgia is a musculoskeletal pain and fatigue disorder characterized by pain in the muscles, ligaments and tendons--the fibrous tissues in the body. Dr. DePompolo concluded that Plaintiff's symptoms "indeed, may be fibromyalgia." (Id. at FBIC 182.) He recommended additional testing and diagnosed her with diffuse myalgia. On March 20, 2000, Dr. Thauwald ordered a test for inflammatory myalgia. Shortly thereafter, Plaintiff was diagnosed with Fibromyalgia by Dr. Craig Thauwald. Plaintiff stopped working and made a claim for total disability for benefits under the policy.

Defendant denied Plaintiff total disability benefits based on the insurance policy's pre-existing condition clause. Defendant determined that the pre-existing condition clause applied because Plaintiff had been seen previously by physicians for the symptoms associated with Fibromyalgia, even though she was not diagnosed with the condition at that

time. After Plaintiff appealed the decision to deny her benefits without success, she filed the underlying lawsuit seeking the benefits. Defendant now moves for summary judgment.

**DISCUSSION**

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Unigroup, Inc. v. O'Rourke Storage & Transfer Co., 980 F.2d 1217, 1219-20 (8th Cir. 1992). The nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. See Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Krenik, 47 F.3d at 957. The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. See Enter. Bank v. Magna Bank, 92 F.3d 743, 747 (8th Cir. 1996).

When an ERISA plan provides the fiduciary with discretionary authority to interpret the terms of its plan, courts apply a deferential standard in reviewing the plan's decision regarding the terms of the plan. Donaho v. FMC Corp., 74 F.3d 894, 900 (8th Cir. 1996). Accordingly, the arbitrary and capricious standard applies. Id. at 898. A plan administrator's decision will be upheld when it is "reasonable; i.e., supported by substantial evidence." Id.

at 899. If the decision is reasonable, it should not be disturbed even if another reasonable, but different, interpretation may be made. Id. at 899. The reasonableness of a plan administrator's decision can be determined by the quantity and quality of evidence supporting it. Id. at 900. A court will not lessen the deference owed to a plan fiduciary unless the claimant presents material and probative evidence demonstrating that (1) the fiduciary had a palpable conflict of interest or committed serious procedural errors and (2) they caused a serious breach of the plan fiduciary's duty to the beneficiary. Ferrari v. Teachers Ins. and Ann., 278 F.3d 801, 806 (8th Cir. 2002).

In support of their motion, Defendant argues that a pre-existing condition is triggered by the commencement of its symptoms and not its diagnosis. Defendant argues that the pre-existing condition period for Plaintiff ran from September 1, 1999, through December 1, 1999. Defendant argues that Plaintiff began to exhibit signs of Fibromyalgia as early as March 1999. Defendant sought treatment for symptoms during the period covered by the pre-existing condition clause. Accordingly, Defendant argues, Plaintiffs' symptoms, which were later identified as Fibromyalgia, are a pre-existing condition under the terms of the policy. Defendant argues that because of the standard of deference due to the plan administrator's decision, its decision to deny benefits must be upheld.

In response, Plaintiffs argues that she was diagnosed with several conditions, including (1) Fibromyalgia, (2) carpal tunnel syndrome-bilateral, (3) status post-breast carcinoma (1998), (4) ventricle and arterial tachycardia, (5) lymph edema of the right arm,

(6) depression, (7) headaches, (8) hypertension, (9) chronic cervical degenerative disc disease, and (10) chronic lumbar degenerative disc disease. Plaintiff argues that it is the combination of these conditions and not the Fibromyalgia itself that caused the disability. Plaintiff argues that she was not treated for all of these multiple afflictions during the time period set forth under the pre-existing condition clause, and therefore, she is not excluded from coverage. Plaintiff also argues that Defendant has overlooked the consecutive three month period following the commencement of coverage. Plaintiff argues that she is not excluded from coverage during that three month period "due to lack of treatment except for her breast problem." (Pl. Mem. at 7.)

The Eighth Circuit has already considered the question of pre-existing condition exclusion when a physician treats the condition but does not diagnose or otherwise put a label on the condition immediately. Kirk v. Provident Life and Accident Ins. Co., 942 F.2d 504 (8th Cir. 1991). In Kirk, the Eighth Circuit held that an employee's heart disease first manifested itself, or became active, prior to the effective date of the policy and thus, coverage was excluded under the pre-existing condition exclusion. Id. at 506. Similarly, in this case, Plaintiff was treated for the symptoms of Fibromyalgia before it was diagnosed. Based on Kirk, such treatment would exclude her from coverage.

The Court also notes that Plaintiff was treated actively and consistently for her symptoms throughout the period of September 1, 1999 through December 1, 1999, and thereafter through March 20, 2000. The additional symptoms Plaintiff cites in her brief are

contained in her medical record and were considered by Defendant in its decision to deny coverage. Dr. William Lohman even considered Plaintiff's depression in his evaluation of her condition. (See Def. Ex. A at FBIC at 12.) At any rate, Plaintiff's complaint centers around her diagnosis with respect to Fibromyalgia. (See Compl. at ¶¶ II and IV.) Based on the foregoing, the Court cannot conclude that the plan administrator abused its discretion in its decision to deny Plaintiff disability benefits.

Accordingly, based upon the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: Nov. 7, 2002

Michael J. Davis
United States District Court Judge

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

**DATE MAILED TO COUNSEL/PRO SE PARTIES:**

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.